**RIGHETTI GLUGOSKI, P.C.**
John Glugoski, Esq. (SBN 191551)
220 Halleck Street, Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
jglugoski@righettilaw.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Hwy., Suite 200
Newport Beach, California 92663
Telephone; (949) 270-2798
Facsimile: (949) 209-0303
rnathan@nathanlawpractice.com

Attorneys for Plaintiff, RONALD TRAER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD D. TRAER, on behalf of himself and all similarly situated persons,<br><br>     Plaintiff,<br><br>vs.<br><br>DOMINO'S PIZZA LLC; DOMINO'S PIZZA, INC., FERNANDO TAPIA DBA DOMINO'S PIZZA, SALMEX PIZZA INC., SALMAR PIZZA INC, JP PIZZA, INC and GAFE PIZZA INC. and DOES 1 through 25 inclusive,<br><br>     Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff RONALD D. TRAER ("Traer") brings this action on behalf of himself and all others similarly situated against DOMINO'S PIZZA LLC, DOMINO'S PIZZA INC. (hereinafter "DOMINO'S") and FERNANDO TAPIA doing business as Domino's Pizza, Salmex Pizza, Inc, Salmar Pizza, Inc, JP Pizza, Inc, and Gafe Pizza Inc (hereinafter "TAPIA"). DOMINO'S and TAPIA are herein collectively referred to as "Defendants." Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself that is based on his own personal knowledge.

## **INTRODUCTION**

1.      Domino's Pizza, Inc and Domino's Pizza, LLC ("DOMINO'S") and TAPIA regard themselves as a pioneer and leader of delivering quality pizza to its consumers.

2.      DEFENDANT DOMINO'S owns "corporate" Domino's Pizza Stores and also has franchisees ("Franchises") who sell pizzas and other authorized products through delivery and carry-out services under the trade name Domino's Pizza. DOMINO'S offers franchises in the form of Traditional and Non-Traditional Domino's Pizza Stores and related concepts under the agreement entitled FRANCHISE DISCLOSURE DOCUMENT, which is overseen by DOMINO'S Pizza Franchising LLC located at 24 Frank Lloyd Wright Drive, Ann Arbor, Michigan 48105. DOMINO'S Franchising LLC is a wholly owned subsidiary of Defendant DOMINO'S.

3.      Defendant DOMINO'S operates the corporately owned Domino's Pizza Stores. Defendant TAPIA and other Franchisees purchase and operate Domino's Pizza Store franchises from DOMINO's and its related entities pursuant to the terms of DOMINO'S "Franchise Agreement" (FRANCHISE DISCLOSURE DOCUMENT).

4.      DOMINO'S is responsible for developing, establishing, promoting and carrying out DOMINO'S National Advertising for all Domino's Pizza Stores (corporate, Traditional Franchises, and Non-Traditional Franchises).

5.      The "Franchise Agreement" requires that Franchisees must contribute to the National Advertising Fund for the cost and expense of national advertising for the benefit of both Domino's Pizza Stores (corporate and franchised) and the Defendants through television ads, national campaigns, public announcement, newspapers and other means of advertising to the general public. DOMINO'S runs its national advertising through Domino's National Advertising Fund, Inc.

6.      DOMINO'S PIZZA INC. is the parent company, directly or indirectly of all Domino's Pizza related entities including DOMINO'S PIZZA LLC, DOMINO'S Pizza Franchising, LLC and also DOMINO'S National Advertising Fund, Inc., a not-for-profit corporation which administers the collection and expenditures of the Advertising Fund from Franchisees like Defendant TAPIA for the purpose of National advertising for the Franchisees.

7.      Franchisees including Defendant TAPIA, pursuant to the terms of the Agreement with DOMINO'S and DOMINO'S related entities must contribute to DOMINO'S National Advertising Fund for advertising expenditures to promote and for the benefit of the Stores and Defendants. Depending on the type of Franchise store purchased (Traditional or Non-Traditional), DOMINO'S has an established fee schedule for the Franchisees to pay into DOMINO'S National Advertising Fund. The percentage charged for a DOMINO'S Traditional Store is four (4) percent of the weekly Royalty Sales. Franchisees must pay up to four (4) percent of the weekly Royalty Sales as an advertising contribution if the Franchisee operates a DOMINO'S Non-Traditional Store to the advertising fund. If a cooperative exists and if 65% or more of the Stores in the cooperative agree or are contractually obligated to contribute a specified percentage of Royalty Sales, then the Franchisee must make the same

percentage contribution to the cooperative. DOMINO'S requires that Franchisees contribute no less than 2% of the weekly Royalty Sales to the cooperative. DOMINO'S can require a maximum combined contribution to the national advertising fund and local and regional advertising of 9% of the weekly Royalty Sales of the Store. DOMINO's Advertising Fund places advertising in any media. The coverage is typically national in nature. The Advertising is developed by DOMINO'S and its related entities in-house marketing department and national advertising agencies and other advertising partners. DOMINO'S also requires Franchisees to participate in local and regional advertising cooperatives for advertising and promotional programs administered by DOMINO'S and its related entities and/or other franchisees.

8.      Through its advertising, DOMINO'S AND TAPIA touts that it is an innovator and pioneer of "delivery ideas that make it easier and more convenient for our consumers.  When you think about pizza places that have delivered hot and fresh from the oven to your door, think Domino's, because we're constantly updating our menu to include…just for you."

9.      TAPIA operates a chain of retail Domino's Pizza Stores in California under the trade name Domino's and/or Domino's Pizza. Ron Traer is informed, believes and on that basis alleges that TAPIA operates a chain of retail stores under the name Domino's and/or Domino's Pizza in California and jointly and severally advertises and markets from the National Advertising Fund run by DOMINO'S and its related entities in California and the US for the stores TAPIA operates. On information and belief, Ron Traer alleges that TAPIA and DOMINO'S are jointly engaged in advertising and marketing the Domino's "MIX & MATCH DEAL" for "CHOOSE ANY 2 OR MORE $5$^{99}$ each" to California residents through the national advertising campaign financed from the National Advertising Fund and run by DOMINO'S and its related entities, which resulted in TAPIA and DOMINO'S receiving money or a

monetary related benefit from the sale of those items purchased by Ron Traer and others similarly situated California consumers who were deceived.

10.    Mr. Traer also alleges TAPIA and DOMINO'S are jointly and severally liable with all other California franchisees, who are operating under the trade name Domino's Pizza for engaging in a false and misleading advertising campaign i.e., "MIX & MATCH DEAL" for "CHOOSE ANY 2 OR MORE $5[99] each" that is financed from the National Advertising Fund and run by DOMINO'S and its related entities nationally, regionally and locally.   DOMINO'S and TAPIA share in the profits generated from the sales of the MIX & MATCH DEAL.

11.    Domino's has been a staple and leader in the food and pizza industry for decades by offering food promotions to its consumers through the national advertising campaigns financed from the National Advertising Fund and run by DOMINO'S and its related entities.  Domino's consumers are well aware that Domino's offers a variety of ways for its consumers to save money on Domino's pizzas and related products, because Domino's touts that it saves its consumers money by offering a variety of discounts through the use of its coupons by way of national marketing campaign that runs on a national, regional, and local level through the National Advertising Fund. Essentially, consumers of Domino's have become accustom to receiving discounts on Domino's products whether directly from the original price because of DOMINO'S national marketing campaigns financed from the National Advertising Fund and run by DOMINO'S and its related entities.

12.    Among its many discounted programs is DOMINO'S and TAPIA'S Domino's "Mix & Match" ("Mix & Match Deal")[1] financed from the National Advertising Fund and run by DOMINO'S and its related entities., which has been in existence since (at least) 2009. Dominos has used a similar advertisement for its "Mix

---

[1] Consumers are not required to be a member of a Domino's loyalty reward program or some other similar service in order to make a purchase under Domino's' Mix & Match deal.

& Match Deal" $5.99 promotional deal through, televisions, billboards, posters, and pictures within the statutory period. Example of DOMINO's and TAPIA's Domino's' Mix & Match Deal are set forth below and confirms that the Pizzas and Specialty chicken are both $5.99:







13.     Plaintiff allege on information and belief that DOMINO'S and TAPIA's Domino's advertisements financed from the National Advertising Fund and run by DOMINO'S and its related entities regarding its Mix & Match Deal is uniform, consistent, distributed, patterned, and is to be equally applied the same – every Mix & Match advertisement provides the prospective customer with a discount on the basis of a coupon or discount with the purchase of two or more items from a designated list of products which is a price reduction from Domino's' standard price for the product in question.

14.     In carrying out its deceptive scheme, DOMINO'S and TAPIA uses advertisements financed from the National Advertising Fund and run by DOMINO'S and its related entities that illustrate the wide variety of products available to the customer. On the "Mix & Match advertisement itself, Domino's choice of few words is intended to highlight the "deal" available to its consumers.

15.     The Mix & Match advertisement also contains words: "MIX & MATCH DEAL," and "CHOOSE ANY 2 OR MORE." DOMINO'S and TAPIA'S use of a larger front size for "$5.99" with white lettering with a red bold enunciated border is the most prominent wording on the advertisement, which is intended and does attract

consumers. On information and belief financed from the National Advertising Fund and run by DOMINO'S and its related entities, Domino's stores implement the same or substantially similar advertising in color, font size, and borders for its Mix & Match deal whether through television, print, or other forms of advertisements.

16. Domino's Mix & Match deal requires the prospective consumer to purchase 2 or more items from its designated list of products at the price of $5.99, which excludes taxes. Most food businesses that provide discounts to their consumers through the use of coupons or other forms of discounts, generally have limited products and even more limited categories available to their consumers.

17. Domino's has a wide variety of products available to consumers through the Mix & Match deal, which is prominently stated on its advertisements financed from the National Advertising Fund and run by DOMINO'S and its related entities. Consumers can apply the coupon to a large selection of Domino's products under the Mix & Match deal that includes broad categories such as two-topping pizzas, salads, cookies, chicken, sandwiches, breads and/or pasta. DOMINO'S and TAPIA'S sets forth the categories[2] of products available to its consumers through the Mix & Match deal. The list of products available through Domino's Mix & Match Deal are: Pizza (Medium) 2 Topping Pizza, Breads, Salads, Pastas, Chicken (collectively referred to as "Products").

18. Consistent with DOMINO'S and TAPIA'S self-promotion and advertising through print, television, radio, and/or other forms of advertising, financed from the National Advertising Fund and run by DOMINO'S and its related entities, Domino's represents, warrants, and promises its consumers that any two (2) of the Products applying the coupon under the Mix & Match deal will cost the prospective customer $5.99 per product (or $11.98), excluding sales taxes.

---

[2] The same categories of products are available to Domino's' consumers regardless of whether the prospective consumer places the order remotely, in person, or over the telephone.

19.    Consumers have the expectation that reputable businesses such as Domino's will conform to any representations, warranties, or statements made in connection with the Mix & Match deal.

20.    Contrary to Domino's' representations, warranties, or statements regarding the discounted price of the Products, it charges consumers more than $5.99 per Product under the Mix & Match deal. On information and belief, Domino's has a pattern and practice of charging its consumers an amount exceeding $5.99 per product from the list of categories. Domino's representations, warranties, and/or statements relating to the $5.99 price per product pursuant to the Mix & Match deal is false and/or misleading.

21.    Plaintiff TRAER, and members of the classes described below paid more than $5.99 for Products under the Mix & Match Deal while making in-store purchases which are not the subject to arbitration clauses or provisions. Contrary to Domino's representations regarding the price of the Products, consumers paid more money than what was stated on Domino's advertisements under the representations as set forth under the Mix & Match Deal.

22.    Defendants' representations, warranties, and statements that the Products are $5.99 per product when Domino's charges more is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day.  As such, Defendants' practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL").  Plaintiff also brings claims for fraud, unjust enrichment and breach of express warranty.

**JURISDICTION AND VENUE**

23.    This Court has personal jurisdiction over Defendants.  Defendants purposefully avails itself of the California consumer market and distributes the

Products to hundreds of locations within this County and thousands of retail locations throughout California and the United States, wherein the Products are purchased by thousands of consumers every day.

24.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

25.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## **PARTIES**

26.     Plaintiff Ronald D. Traer is a citizen of California, residing in Los Angeles County.

27.     Mr. Traer purchased Products under Domino's Mix & Match deal financed, on information and belief, through the National Advertising Fund and run by DOMINO'S and its related entities on March 20, 2021. On March 20, 2021, Traer made an in-store non-website purchase of two (2) two medium pizzas (one with mushroom and black olives, and the other with chicken and bacon) and an order of Sweet BBQ Bacon Chicken from TAPIA's operated store located at Store #7845 located at 14712 Whittier Blvd Whittier, CA 90605 under DOMINO'S and TAPIA's Domino's Mix & Match Deal. Mr. Traer was charged more than $5.[99] for

one or more of the items that should have cost him $5.99 each under the terms of the Mix & Match Deal.

28.    DOMINO'S and/or TAPIA provide no disclaimer of extra charges or extra costs applicable to any of the items purchased in marketing the Mix & Match Deal.

29.    Mr. Traer has never made purchase of DOMINOS online nor Mr. Traer ever used the DOMINO'S application to make any purchases of DOMINO'S.

30.    Mr. Traer saw, heard and read the terms of the Mix & Match Deal on a television advertisement and/or public advertisement prior to purchasing the 2 topping medium pizzas and Sweet BBQ Bacon Chicken on March 20, 2021.  Mr. Traer purchased these products as a result of the advertising that he saw on television and/or in public "MIX & MATCH DEAL" and "CHOOSE ANY 2 OR MORE $5.99 each" associated with the food items shown in the advertisement financed from the National Advertising Fund and run by DOMINO'S and its related entities. These advertising identified by Mr. Traer along with all products sold in connection with the advertising implemented by DOMINO'S for all Domino's in California, that contain the advertising display "MIX & MATCH DEAL" "CHOOSE ANY 2 OR MORE $5.99 each" are hereinafter referred to as the "Mix & Match Deal."

31.    Mr.  Traer would purchase the Products again in the future if Defendants' actual price of Products conformed to its representations, warranties, and statements.

32.    Defendant Domino's Pizza, LLC is a Delaware limited liability company that has its principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan.

33.    Defendant, Domino's Pizza, Inc. is a Delaware Corporation that has its principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan.

34.    Defendants Domino's Pizza, LLC, Domino's Pizza, Inc., and DOES 1 through 10, inclusive are collectively referred to as "DOMINO'S")

35.     Defendant Fernando Tapia doing business as Domino's Pizza, Salmex Pizza, Inc, Salmar Pizza, Inc, JP Pizza, Inc, and Gafe Pizza Inc. (hereinafter "TAPIA") are California Corporations that have principal places of business at 7807 Telegraph Rd., STE K Montebello, CA, 90640 and 14712 Whittier BLVD Whittier, CA 90605

36.     Defendants DOMINO'S and TAPIA and DOES 1 through 10, inclusive are collectively referred to as "Defendants")

37.     Defendants advertise and market the Mix and Match deal in retail stores across the United States, including California. Defendants knew or should have known that they were overcharging consumers that made purchases under the Mix and Match deal. Defendants' representations, warranties, and statements regarding the Mix and Match deal are false and misleading to a reasonable consumer, because Defendants charge more than the advertised pricing of $5.99 per item under the Mix and Match deal.

## FACTS COMMON TO ALL CAUSES OF ACTION

38.     Discounts, sales promotions, and other techniques are instruments that seek to increase sales of products and brands.  There are several factors working through an offered discount which causes consumers to make purchases, including, but not limited to, attractiveness of the discount promotion, impulsiveness, hedonic perception, and financial risk perception which all drive the consumer's purchasing intent[3].

39.     Over the past three decades, consumers have become increasingly interested in obtaining discounts while purchasing goods or products. In 1887, Coca-Cola distributed the first-ever coupon, which served to shape the future of commerce

---

[3] Campbell, L., & Diamond, W.D. (1990). Framing and sales promotion: The characteristics of a "Good Deal." Journal of Consumer Marketing, 7(4), 25-31; Bruner, G.C. II & Hensel, P.J. (1998) Marketing scales handbook; A compilation of multi-items measures, Chicago: American Marketing Association; An analysis of the influence of discount sales promotion in consume buying intent and the moderating effects of attractiveness.

and consumers have never looked back. RetailMeNot, Inc., the world's largest digital coupon marketplace indicated that consumer demand for discounts or coupons will continue to increase.

40.     Consumers surveyed in the U.S. and India (76%) rank the highest among shoppers who believe saving is important and more than half (53%) of U.S. residents favor brands that issue coupons online or in-store because they help them buy the things they want or need.[4]

41.     Discounts and savings have become so popular that it has impacted the restaurant and food industry. 41% of Pizza customers use a coupon at least once a week and 64% would switch to try a new pizza business if a discount or saving was offered.  Domino's has always been aware that its Mix & Match deal would create additional demand from its customers.

42.     The Mix & Match deal includes broad categories of food such as pizza, salads, cookies, chicken, sandwiches, breads and/or pasta.

43.     The Mix and Match deal applies to the following products: Pizza Style: Hand Tossed; Crunchy Thin Crust; Handmade Pan Sauce: Robust Inspired Tomato Sauce; Hearty Marinara Sauce; Honey BBQ Sauce; Garlic Parmesan Sauce; Alfredo Sauce; Ranch; Toppings: Meats: Ham; Beef; Salami; Pepperoni; Italian Sausage; Premium Chicken; Bacon; Philly Steak; Non-Meats: Hot Buffalo Sauce; Garlic; Jalapeno Peppers; Diced Tomatoes; Black Olives; Mushrooms; Pineapple; Shredded Provolone Cheese; Cheddar Cheese; Green Peppers; Spinach; Roasted Red Peppers; Feta Cheese; Shredded Parmesan Asiago; Parmesan Bread Twists; Garlic Bread Twists; Cinnamon Bread Twists; Stuffed Cheesy Bread with Bacon & Jalapeno; Stuffed Cheesy Bread with Spinach & Feta; Stuffed Cheesy Bread; Classic Garden; Chicken Caesar; <u>Marbled Cookie Brownie:</u> Domino's Signature Marble Cookie

---

[4]     https://retailmenot.mediaroom.com/2013-08-21-A-Coupon-Nation-Americans-Proudly-Use-Coupons-More-Than-Shoppers-in-Great-Britain-India-and-China-Among-Others

Brownie; Boneless Chicken; Specialty Chicken: Crispy Bacon & Tomato; Sweet BBQ Bacon; and Spicy Jalapeno – Pineapple.

44.     On information and belief, Defendants' advertisements regarding the Mix and Match deal, as herein stated, occurred at all times during the last four years, at least.

45.     Based on the language that appears on the advertisements, Plaintiffs and Class Members believed the price of the first product to be $5.99, the second to be $5.99, with the ability to make additional purchases for $5.99 from the designated list of the Mix and Match deal.

46.     The phrases "MIX & MATCH DEAL," and "CHOOSE ANY 2 OR MORE," "MEDIUM 2-TOPPING PIZZA," "BREAD TWISTS," "SALAD," "MARBLED COOKIE BROWNIE," "SPECIALTY CHICKEN," "OVEN BAKED SANDWICH," "STUFFED CHEESY BREAD," "8-PIECE BONELESS CHICKEN," "OR PASTA IN A DISH FOR $5.99 EACH", $5.99," "ORDER NOW," coupled with all any identical or substantially similar language are representations to a reasonable consumer. The phrases are misleading to a reasonable consumer because Defendant's charge consumers more than advertised $5.99 for each product under the Mix and Match Deal.

47.     The package design plays a crucial role in consumer purchase decisions. Consumers take on average seven seconds to decide whether to buy a product. Effective product packaging therefore must quickly make an emotional and psychological impression on the consumer in the very small window of time that the consumer makes his or her purchase decision.  Against that backdrop, consumer impressions of whether a product is at a discount are commonly based on so-called "cues" of bargains, discounts, and coupons.  One common technique marketers use to signal that a product is at a discount is to emphasize the "deal" the consumer will receive.  Conversely, another common technique is to emphasize the amount to be

paid as a result of the purported discount to the consumers. Such cues are commonly reinforced with imagery and images as described herein above paragraphs 8-10.

48. Defendants knew that consumers would rely on Defendants' advertising without verifying on the receipt if the discount was applied to the Mix and Match deal.

## CLASS ALLEGATIONS

49. Plaintiff Traer seek to represent a class defined as: "All persons in the United States who purchased the Products through Defendants' "Mix and Match" deal and are not subject to an arbitration agreement, at any time during the class period" (the "Class"). Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

50. Plaintiff Traer seek to represent a Subclass of: "All persons in California who purchased the Products through Defendants' "Mix and Match" deal and are not subject to an arbitration agreement, at any time during the class period (the "California Subclass"). Excluded from the California Subclass are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

51. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

a. whether Defendants misrepresented material facts concerning their Mix and Match advertising;

b. whether Defendants' conduct was unfair and/or deceptive;

c.      whether Defendants has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the classes;

d.      whether Defendants breached express warranties to Plaintiff and the classes;

e.      whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

52.      Plaintiff's claims are typical of those of other class members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the Mix and Match representations and Plaintiff sustained damages from Defendants' wrongful conduct.

53.      Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

54.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.      The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

56.      The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.   For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual

actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* *(For Damages and Injunctive Relief)*

57.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiff Traer brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

59.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

60.     Plaintiff Traer and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

61.     Plaintiff Traer, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

62.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

63.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Traer and the other members of the California Subclass that the Products would be sold at a certain price point i.e., $5.99 per item when in fact Defendants charge a price that is higher than the advertised price.  In other words, Defendants sell the Products for prices that do not conform to their representations, warranties, and statements.

64.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

65.     On April 19, 2021, Plaintiff Traer mailed a notice letter to Defendants consistent with California Civil Code § 1782(a), and Defendants responded to the letters on or about May 13, 2021. The letters were sent on behalf of Traer and all other persons similarly situated.

66.     On or about June 4, 2021 and June 24, 2021, Plaintiff sent amended CLRA letters to clarify statements in the prior CLRA letter dated April 13, 2021 and to include additional defendants as recipients in the notice.

67.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Traer, on behalf of himself and all other members of the California Subclass, seeks injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

68.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

69.     Plaintiff Traer bring this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

70.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.   The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

71.     Defendants violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

72.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious

to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

73.    Defendants violated the "fraudulent" prong of the UCL by misrepresenting that the Products would be sold at the advertised price of $5.99 per product, however Defendants actually sold the Products to Plaintiff and California Subclass for a higher price.

74.    Plaintiff Traer and the California Subclass lost money or property as a result of Defendants' UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew Defendants would not conform their pricing to their representations, (b) they paid more than the advertised price based on Defendants' misrepresentations; and (c) the price of the Products or the value of the Products do not have the characteristics, uses, or benefits as promised.

75.    The acts and practices alleged herein are unfair, fraudulent and unlawful because they are likely to both deceive consumers and cause consumers to falsely believe that Defendants are offering value, discounts or bargains at the prevailing market value or worth of the Products sold that do not, in fact, exist. As a result, consumers, including Plaintiff, have reasonably perceived that they are receiving price reductions on purchases of Products from Defendants. This perception has induced reasonable consumers, including Plaintiff, to buy such products from Defendants and to refrain from shopping for the same or similar products from competitors of Defendants. Plaintiffs and the other members of the California Subclass relied on Defendants' advertising to make purchases of products within the class period. Plaintiff and the other members of the California Subclass purchased products and lost money from the purchase of these products, as a result of Defendants' false advertising because the Mix & Match Deal is not accurately represented to consumers. As detailed in herein, the alleged conduct is unlawful unfair and fraudulent by advertising goods for sale based on purported discounts and savings that do not exist.

76.     The gravity of the harm to the other members of the California Subclass resulting from these unfair, fraudulent and unlawful acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants have engaged, and continue to engage, in unfair business practices within the meaning of California Business & Professions Code §§ 17200, et seq.

77.     Through its unfair, fraudulent and unlawful acts and practices, Defendants have improperly obtained money from Plaintiffs and the other members of the California Subclass, and continues to improperly obtain money from the general public. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and the other members of the California Subclass, and to enjoin Defendants from continuing to violate the UCL as discussed herein. Otherwise, Plaintiffs, and the other members of the California Subclass and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. Plaintiff also, requests that this Court order a backward-reaching injunction in order to remedy the past effects of the unfair conduct alleged herein.

## COUNT III
### Violation Of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*

78.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

79.     Plaintiff Traer brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

80.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement,

concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

81.     Defendants committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products would be sold for the advertised price of $5.99 under the Mix and Match deal.

82.     Defendants knew or should have known through the exercise of reasonable care that their representations about the price of Products were untrue and misleading.

83.     Defendants' actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiff Traer and the California Subclass lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the price of the Products were greater than the advertised price, (b) they paid more money than Defendants' advertised price based on Defendants' misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

84.     The misleading and false advertising described herein presents a continuing threat to Plaintiff and the other members of the California Subclass in that Defendants persist and continue to engage in these practices and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct will continue to cause irreparable injury to consumer unless enjoined or restrained.  Plaintiff and the other members of the California Subclass are entitled to preliminary and permanent injunctive relief ordering Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiff and the other members of the California Subclass of Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## COUNT IV
**Breach of Express Warranty**

85.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiff Traer brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

87.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the advertised price of the Products was accurate.

88.     Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the price of the Products, became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that the price of the Products would conform to those affirmations of fact, representations, promises, and descriptions.

89.     The price of the Products does not conform to the express warranty because Defendants charged Plaintiffs and similarly situated Class Members more than the advertised price.

90.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the price; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the price of the Products do not have the characteristics, uses, or benefits as promised.

91.     On June 4, 2021 Plaintiff Traer mailed letters to Defendants consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), and Defendants received those letters.   The letters were sent on behalf of Traer and all other persons similarly situated.

## COUNT V
**Unjust Enrichment**

92.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiff Traer brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

94.     Plaintiff Traer and Class Members conferred benefits on Defendant by purchasing the Products.

95.     Defendants has been unjustly enriched in retaining the revenues derived from Plaintiff' and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the price of the Products, which did not conform to its advertising, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products on the same terms if the true facts had been known.

96.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

## COUNT VI
### Fraud

97.     Plaintiff Traer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

98.     Plaintiff Traer brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

99.     As discussed above, Defendants provided Plaintiffs and Class Members with false or misleading material information about the Products by representing that Defendants would sell the advertised Products at a certain price i.e. $5.99 per item

under the terms of the Mix and Match deal. Defendants made that misrepresentation to Plaintiff and Class Members knowing it was false.

100.   Defendants' misrepresentations, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

101.   Defendants' fraudulent actions harmed Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and California Subclass as follows:

A.   For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representative; and naming Plaintiff's attorneys as Class Counsel representing the Class and Subclass members;

B.   For an order finding in favor of Plaintiff, the nationwide Class, the California Subclass, on all counts asserted herein;

C.   For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.   For injunctive relief enjoining the illegal acts detailed herein;

E.   For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief;

G.   For an order awarding Plaintiff his reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 30, 2021                     Respectfully submitted,

                                         **RIGHETTI GLUGOSKI, P.C.**

                                         By:_____*/s/ John Glugoski*_____
                                                     John Glugoski

                                         John Glugoski, Esq. (SBN 191551)
                                         jglugoski@righettilaw.com
                                         220 Halleck, Suite 220
                                         San Francisco, CA 94129
                                         Telephone: (415) 983-0900
                                         Facsimile: (415) 397-9005
                                         jglugoski@righettilaw.com


                                         **NATHAN & ASSOCIATES, APC**

                                         By:_____*/s/ Reuben D. Nathan*_____
                                                     Reuben D. Nathan

                                         Reuben D. Nathan (State Bar No. 208436)
                                         2901 W. Coast Hwy., Suite 200
                                         Newport Beach, California 92660
                                         Telephone: (949) 270-2798
                                         Facsimile:  (949) 209-0303
                                         rnathan@nathanlawpractice.com

                                         *Attorneys for Plaintiff*